MICHAEL KURTZ, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The act of the Legislature of the State of Florida, of February 17th, 1881, providing for the arrest and detention of fugitives from justice from other States, is not in conflict with section 2, Article 4, of the Constitution of the United States, or sections 5278 and 5279 of the Revised Statutes passed in pursuance thereof.

2. It is not necesssary to consider the question as to the right of the Governor of this State to withhold the papers upon which he based his warrant for the arrest of an accused fugitive from justice when the record shows that the requisition and accompanying papers from the Governor of the State where the crime was committed constituted the evidence upon which he acted, and were submitted to the court to which the writ of *habeas corpus* was returned.

3. It is immaterial whether the warrant of the Governor of this State. for the arrest of a fugitive from justice from another State is based on an original affidavit or a copy thereof, when either one presented to the resident Governor is certified to by the Governor of the State where the crime was committed as being authentic.

4. The fugitive from justice cannot on *habeas corpus* impeach the validity of the affidavit upon which the requisition was founded, if it distinctly charge the commission of a crime.

5. A police magistrate of a city in the State of New York is a magistrate within the meaning of section 5278 of the Revised Statutes. of the United States.

6. The principle of *res adjudicata* cannot be applied to a case where a fugitive from justice is arrested a second time on a second warrant issued by the Governor of this State, though the offence charged in each warrant is the same.

Writ of Error to the Circuit Court for Duval county.

Michael Kurtz was arrested in the county of Duval on the 19th day of January, 1886, upon a warrant issued by a justice of the peace as a fugitive from justice from the

State of New York. On January 20th a writ of habeas corpus was issued by his Honor James M. Baker to the sheriff of said county, commanding him to bring the said Michael Kurtz before said Judge on the 21st January.

To this writ the sheriff made return that he held said Kurtz in custody by virtue of a warrant issued by one Marcy, a justice of the peace, January 19th, 1886, under proceedings against said Kurtz as a fugitive from justice from the State of New York. The Judge upon a hearing remanded the prisoner to the custody of the sheriff to be held for such time as the court might indicate by its further order, not to exceed ten days. On January 26th the Judge issued another writ of habeas corpus as above, returnable the 27th of January. To this writ the sheriff, made return the same as to the former writ, and also on said last mentioned day made a further return that he held said Kurtz by virtue of a warrant from the Governor of Florida, issued the 26th of January, 1886. On the 28th day of January the Judge discharged the prisoner.

Michael Kurtz was re-arrested on the 29th day of January, and Judge Baker issued another writ of habeas corpus, returnable on the 30th of January. To this writ the sheriff returned that he held said Kurtz by virtue of a commitment issued by one Marcy, a justice of the peace, dated January 28th, 1886. On January 30th the Judge again discharged the prisoner for the reason that the commitment was defective. The prisoner being again arrested the Judge on the same day, January 30th, issued another writ of habeas corpus, returnable February 1st. The sheriff returned that he held said Kurtz by virtue of a commitment issued by said Marcy on same day. On this hearing the Judge ordered the prisoner to be remanded to the custody of the sheriff to await extradition papers. On the 8th day of February the sheriff made a further return

to the writ that he held said Kurtz in custody by virtue of a warrant issued by E. A. Perry, Governor of the State of Florida, dated February 2d, commanding him ·to arrest said Kurtz, and to deliver him to the ·agent of the State of New York. On the hearing the said Judge remanded the prisoner to be dealt with in accordance with the directions in the Governor's warrant.

From this judgment the prisoner prosecutes his writ of error.

*F. W. Pope* and *O. J. Summers* for Plaintiff in Error.

The case at bar presents itself in two phases: 1st, De-taining alleged fugitive to await extradition papers. 2d, Remanding alleged fugitive upon production of papers.

The following propositions are respectfully submitted :

I. Chapter 3257, authorizing the arrest and detention of fugitives from justice, is unconstitutional. Prigg vs. Commonwealth of Pennsylvania, 16 Peters, 539, *et seq.;* Houston vs. Moore, 5 Wheaton, 543, *et seq.*

II. A fugitive from justice cannot be detained longer than ten days to await extradition papers. Church on Habeas Corpus, p. 614 ; *Ex parte* Rosenblatt, 51 Cal., 285.

III. The warrant committing a fugitive from justice should contain the recitals that the alleged fugitive was brought before the justice or Judge and examined, and that upon such examination there was found to be probable cause to justify detention, and that the fugitive is committed to await warrant of extradition. Church on Habeas Corpus, p. 614 ; Chapter 3257, Laws of Fla.; *Ex parte* Rosenblatt, 51 Cal., 285.

IV. An alleged fugitive from justice should not be committed more than one time, when, in the matter upon first commitment was involved all the elements of a final hear-

ing, and wherein was or might have been adjudicated every question relating to his detention as a fugitive from justice. The principle of *res adjudicata* and former jeopardy apply. Hurd on Habeas Corpus, 571, 572; 62 Ga., 598; 20 Fla., *Ex parte* Powell, 811.

V. If the detention to await extradition papers is illegal, subsequently receiving proper extradition papers does not cure the illegalities of that detention, and the prisoner is entitled to his discharge. Church on Habeas Corpus, p. 627.

VI. To authorize the extradition of a fugtive from justice, the charge against him should be made legally, in the regular course of judicial proceedings, and a copy of said charge, (not the original,) by indictment or affidavit, duly certified and authenticated, should be produced by Governor of demanding State to the Executive authority of the State in which the fugitive is found. Church on Habeas Corpus, pp. 620, 618; 24 Howard, 18; 20 Fla., 811, in *in Ex parte* Powell; Spear on Extradition, pp. 272, 271, 300; 56 N. Y., 182; Spear on Extradition, pp. 270, 269, 268, 262; 56 New York, 182, 190, 191; *Ex parte Smith*, 3 McLean, 121; U. S. Digest, Vol. 6, secs. 17, 29.

VII. It is not in the regular course of judicial proceedings to make an affidavit of complaint in an inferior court as the basis of extradition proceedings, while the same matter is pending by indictment in a superior court. Commonwealth of Kentucky vs. Dennison, 24 Howard, 18; Taylor vs. Tudor, 16 Wallace; Burdette vs. State, 19 Texas, p. 43; Spear on Extradition, pp. 353, 328, 281.

VIII. An assistant police magistrate of a city is not the magistrate of a State, contemplated by the act of Congress. Spear on Extradition, p. 292; Hurd on Habeas Corpus, p. 589; 3 Criminal Law Magazine, p. 792; Kentucky vs. Dennison, 24 How., 18.

IX. The facility with which charges are made and warrants obtained makes it incumbent on the courts to see that the case falls within the law. Church on Habeas Corpus, pp. 219, 476, 478, 481, 618, 620, 627 ; Spear on Extradition, pp. 339, 340, 336, 337, 323, 304, 397, 278 ; 50 Iowa, 106.

X. The original affidavit is not a proper paper, or evidence required by the act of Congress on which the Executive warrant should issue. By the act, and on principle, it should be a copy. State vs. Stewart, 60 Wis. ; Am. Repts., Vol. 50, p. 388 ; Spear on Extradition, pp. 348, 337, 333, 328, 329, 304, 397, 395, 391, 267, 268, 269, 270, 261, *et seq.*; *Ex parte* Pfitzer, 28 Ind., 450.

XI. The extradition papers are the requisition, a copy of the indictment, or a copy of the affidavit and the executive warrant. U. S. Revised Statutes, sec. 5278 ; Spear on Extradition, pp. 303, 304, 299, 292, 291, 228.

XII. The affidavit imports on its face what it is. Burr's Case, Church on Habeas Corpus, p. 265 ; 1 Criminal Law Magazine, pp. 792, 800 ; Church on Habeas Corpus, pp. 263, 264, 265, 266 and note—" Trial of Col. Aaron Burr."

XIII. The question is *res adjudicata*.

In the United States, there has been exhibited in the opinions of the courts, and acts of Legislatures, a tendency to attach to a decision in habeas corpus the legal incidents belonging to *res adjudicata*—especially should this be so when the decision of the lower court is reviewable by appellate court. Hurd on Habeas Corpus, pp. 571, 572 ; *Ex parte* Powell, 20 Fla., 811 ; Parker's C. R., Vol. 1, 137 ; Ib., Vol. 5, p. 113 ; 62 Ga., 598 ; Tidwell vs. Witherspoon, Fla. Repts., Decisions January Term, A. D. 1885 ; McConologues' Case, 107 Mass., p. 171 ; 25 Wendell, Mercein vs. People, p. 95 ; People vs. Aiken, 4 Hill ; 7 Wall., 82 ; Church on Habeas Corpus, p. 520 ; 17 Hun., 203.

XIV. The extradition papers are not authenticated in accordance with law. 3 Criminal Law Magazine, 800 ; U. S. Revised Statutes, sec. 908.

*The Attorney-General, Call & Jones, A. W. Owens* and *Randall, Walkers & Foster* for Defendant in Error.

THE CHIEF-JUSTICE delivered the opinion of the court:

The first question brought to our attention is the constitutionality of the act of February 17th, 1881, entitled "An Act relating to the arrest of fugitives from justice from other States." It is insisted by the counsel for plaintiff in error that this act is repugnant to the Constitution of the United States for the reason that it is legislation by a State on a subject matter that was exclusively delegated by the Constitution to Congress, and that Congress had legislated thereon. We find no support of this proposition in the adjudged cases, except a *dictum* of Justice Story in the case of Prigg vs. the Commonwealth of Pennsylvania, 16 Peters, 539. The question before the court was the constitutionality of the act of the State of Pennsylvania of March 26th, 1826, making it a penal offense to carry away from the State fugitive slaves by force and violence, and did not involve the question under consideration here, and all reference to it might have been omitted. Spear on Extradition, 245. The Constitution in article 4, section 2, provides that " a person charged in any state with treason, felony or other crime, who shall flee from justice, and be found in another State, shall, on demand of the Executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime." Neither the act of Congress nor the Constitution of the United States relate in any way to fugitives from justice from one State to another, or makes any provision

concerning them until a *demand* has been made for their delivery. "The demand is evidently the initial point at which the Constitution and the law begin to operate, and prior to this neither has any application to the case." Ib. While legislation by a State against the Constitution and the law of Congress, impairing the full operation of their provisions, would be nugatory, yet it is competent for a State Legislature to enact laws on the subject at a stage prior to that which the Constitution and Federal Laws have designated as the time at which they take cognizance of it, provided that such enactments are not inconsistent with the end named in the Constitution. Chief-Justice Shaw in Commonwealth vs. Tracy, et al., 5 Metcalf, 536, in considering the constitutionality of a similar act in view of the doctrine stated in Prigg vs. Commonwealth, *supra*, used the following language: "It is a provision obviously not repugnant to the Constitution and Laws of the United States, nor tending to impair the rights or relax the duties intended to be secured by them. To this extent, therefore, the court are of opinion that this law is constitutional and valid, one that the Legislature had the authority to pass." See also 51st California, 285, *Ex parte* Rosenblatt. In this case it is held by the court that such legislation is based on principles of comity. Mr. Hurd in his work on *Habeas Corpus*, p. 636, says that "legislation of this character when in no sense opposed to the law of Congress may be vested in the general police power of the States." The Commonwealth vs. Hall, 75 Mass., 262; Robinson vs. Flanders, 29 Ind., 10; *Ex parte* Cubreth, 49 Cal., 436; *Ex parte* Ammons, 34 Ohio State., 518.

It is insisted by the counsel for the State that the Governor could rightfully withhold the papers upon which he based his warrant for the arrest of the prisoner. It is unnecessary to consider this question, as the record shows that

the requisition from the Governor of New York, and the accompanying papers, constituted the evidence upon which he acted and were submitted to the court. *Ex parte* Reggle, 114 U. S., 642.

The questions the record presents for our determination are :

1st. Is Michael Kurtz charged with the commission of treason, felony, or other crime in the State of New York ?

2d. Is he a fugitive from justice ?

3d. Is he found in this State ?

4th. Has he been demanded by the Executive of the State of New York of the Executive authority of the State of Florida ?

5th. Has the Governor of the State of Florida issued his warrant for his arrest ?

Counsel for plaintiff in error insists that a copy of the charge against Kurtz in the State of New York—not the original—should have been presented to the Governor of this State to authorize the issue of his warrant.

The statute of the United States, sec. 5278 Revised Statutes, is as follows: " Whenever the Executive authority of any State or Terrifory demands any person as a fugitive from justice, of the Executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found, or an affidavit made before a magistrate of any State or Territory," &c., &c. It will be seen that the statute is not clear as to whether an original affidavit or copy thereof was intended to be produced to the Governor of the State to which the alleged fugitive had fled. But whichever construction may be placed on the statute is unimportant. Either the original affidavit, or a copy of an affidavit in each case, certified by the Governor of the State from which the fugitive had fled as authentic,

would be sufficient to authorize the action of the Governor of the State where the fugitive was found.

Such a certification would place its genuineness beyond dispute.

The fugitive from justice cannot, on *habeas corpus*, impeach the validity of the affidavit upon which the requisition was founded, if it distinctly charge the commission of an offence.   Church on Habeas Corpus, sec. 476.

The Governor of the State issuing the requisition for the fugitive is the only proper judge of the authenticity of the affidavit, and when the requisition certifies that the affidavit " is duly authenticated according to the laws of said State" it is sufficient.   *In re* Manchester, 5 California, 237 ; Church on Habeas Corpus, sec. 479.

The certification does not make the charge of crime but simply authenticates the copy of that which does make it, and for this purpose it is conclusive.   *In re* Manchester, *supra.*

Counsel for Kurtz insists also that the act of Congress, sec. 5278, does not authorize the making of the original affidavit before an assistant police magistrate of a city.   We are of the opinion that the designation of "magistrate" in the act includes the officer before whom the affidavit was made.

Rapalye and Lawrence's Law Dictionary defines " magistrate " as meaning a judicial officer having a summary jurisdiction in matters of a criminal or quasi-criminal nature, and is commonly used in the United States to designate two classes of judicial officers, Justices of the Peace and Police Justices.   An American Consul at a foreign port has been held to be a " magistrate " within the meaning of an act which provides that deeds should be acknowledged "before a Justice of the Peace, or before a Justice of the Peace or *magistrate* in some other of the United States of

America or in any other State or Kingdom in which the grantor may reside." Scanlan *et ux.* vs. Henry Wright, 13 Pick., 523.

Counsel also insists that the former discharges of Kurtz by the Judge below had the force and effect of *res adjudicata* and that he could not be arrested a second time for the same charge.

We have examined the numerous authorities submitted by counsel as well as others referred to in the text-books, and while it seems that in those States where a judgment of a court in a *habeas corpus* proceeding discharging or remanding to custody a prisoner is final, and a writ of error is allowed thereon, that the principle of *res adjudicata* is applicable, yet in none of these cases was the question of extradition involved. No case brought to our attention has decided that the principle applies where the discharge of the prisoner was from the custody of an officer holding him by virtue of a warrant of a resident Governor, upon the requisition of the Governor of the State from which he had fled. They are all cases where the parties were restrained of their liberty for alleged crime by some local State law, or seeking discharge from the army or navy, both of which required a hearing and inquiry into evidence and a judicial determination of the facts and the law.

The courts in a Habeas Corpus proceeding of this kind, where the prisoner is arrested for extradition, cannot go into a trial of the merits of the cause. The proceeding is only an initiatory step to a trial in another State. As to the guilt of the prisoner, they are not allowed to inquire. Their judicial powers are limited to a determination on the sufficiency of the papers and the identity of the prisoner. If the prisoner is discharged, it will not absolve him from being re-arrested on a new warrant issued by the Governor. An inspection of the record shows that the act of Congress

was complied with, and we are of the opinion that the judgment should be affirmed. It is ordered that Henry D. Holland, the Sheriff of Duval county, is hereby authorized and commanded to execute the warrant of arrest issued by the Governor of the State of Florida of February 2d, 1886, upon the requisition of the Governor of the State of New York, for the surrender and delivery of Michael Kurtz, and to deliver the said Michael Kurtz to George B. Hazlehurst, the agent of the State of New York.