482 So.2d 376 (1985)
Jimmy JOSEY, Appellant,
v.
Drew GALLOWAY, As Sheriff of Holmes County, Appellee.
No. AZ-233.
District Court of Appeal of Florida, First District.
September 26, 1985.
*379 W. Paul Thompson, DeFuniak Springs, for appellant.
Gregory C. Smith and Andrea Smith Hillyer, Asst. Attys. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Jimmy Josey appeals an order denying his petition for writ of habeas corpus and directing his return to the custody of the state of Alabama pursuant to properly issued extradition papers. The issue presented is whether Josey met his burden of overcoming the presumption of fugitiveness arising from the governor of Florida's warrant of arrest and whether the appellee produced corroborating evidence of fugitiveness sufficient to create a conflict in the evidence requiring denial of habeas corpus relief as a matter of law. We reverse and remand for further proceedings.
Appellant filed in the Circuit Court of Holmes County a petition for writ of habeas corpus alleging he was improperly being held in jail in the state of Florida by the appellee sheriff, that he had not been properly charged with any crime, and that he was in the state of Florida at all times on the date the crime charged in Alabama allegedly occurred. On February 9, 1984, the District Attorney for the Twentieth Judicial Circuit of Alabama filed a sworn application for extradition with the governor of Alabama alleging that Josey had been charged in the Henry County Circuit Court with the offense of second-degree theft, as shown by attached copies of an indictment and writ of arrest. The district attorney's application stated that the crime was committed on October 16, 1983, in the City of Headland, County of Henry, Alabama, and that Josey was present in the state of Alabama at the time of the commission *380 of the crime and was a fugitive from justice in the state of Florida, in or near Bonifay. The indictment attached to the application for extradition charged in its entirety that:
Jimmy D. Josey, whose name is to the Grand Jury otherwise unknown, did knowingly obtain or exert unauthorized control over ten tons of nitrogen fertilizer, the property of Don Johnson, of the value of, to wit: $1500, with the intent to deprive the owner of said property, in violation of 13A-8-3 of the Code of Alabama.[1]
The indictment had been returned by the Alabama grand jury on January 31, 1984, and the writ of arrest issued by the state of Alabama on that same date. On March 8, 1984, the governor of Alabama issued a demand for extradition upon the governor of Florida representing that Josey had been charged by indictment with the crime of second-degree theft in Alabama, that Josey was personally present in Alabama at the time of the alleged offense, and that Josey had fled from Alabama and taken refuge in Florida. Certified copies of the indictment and the writ of arrest were attached to the demand. On March 26, 1984, a warrant of arrest was executed by the governor of Florida commanding the sheriff of Holmes County to arrest Jimmy Josey. There is no mention in the record of the date Josey was arrested by the sheriff.
On April 17, 1984, a hearing was held on Josey's petition for writ of habeas corpus. The state, on behalf of the sheriff, introduced the extradition documents in evidence and rested its case. These documents consisted of the district attorney's sworn application for extradition, the indictment, the writ of arrest, the demand from the governor of Alabama, and the warrant of arrest executed by the governor of Florida.
Appellant then introduced the testimony of seven witnesses, including himself and his wife, which, if believed, proved that appellant was not in Alabama on the alleged date. The evidence revealed that appellant, between March and May 1983, was a sales representative for Golden Plant Food Company, a business that manufactured fertilizer in Henry County, Alabama. Sometime between March and May 1983 appellant was in the vicinity of Headland attending a meeting with representatives of Golden Plant Food Company. According to petitioner, that is the last time he was in or near Headland. The testimony of an eyewitness reveals that the alleged theft occurred on October 16, 1983, when certain individuals purporting to be representatives of Golden Plant Food Company loaded fertilizer owned by Don Johnson onto a truck and drove away. This eyewitness testified that he knew Jimmy Josey and that Mr. Josey "was not one of the individuals there with the truck loading the fertilizer" (R. 37). Four witnesses testifying for appellant, three of whom were unrelated to Josey, stated they saw him in Bonifay during various parts of the day on October 16, 1983. This testimony accounted for petitioner's presence between 8:30 a.m. and 5:30 p.m. Petitioner and his wife testified that petitioner was in Bonifay during all hours of October 16.
At the close of Josey's case, counsel for Josey argued that he had presented competent, uncontradicted evidence that Josey was not in Alabama at the time of the alleged offense and that the petition for writ of habeas corpus should be granted. The state argued that Mr. Josey's evidence was not persuasive enough to overcome the presumption arising out of the extradition documents and carry his burden of proving that he was not in Alabama on the date of the crime. The state also relied on the *381 district attorney's application as sworn proof that Josey was present in Alabama. Josey's attorney noted the district attorney's lack of personal knowledge of Josey's presence in the state. The court requested legal memoranda and took the petition under advisement. On May 4, 1984, the court denied the petition for writ of habeas corpus, concluding "there is no legal reason that would bar Alabama authorities from returning Jimmy Josey to that state to answer criminal charges named in the governor's rendition warrant." Josey has appealed this final order.
The power to extradite fugitives from justice derives directly from Article IV, Section 2, United States Constitution, and its implementing federal statute, 18 U.S.C.A. § 3182. Roberts v. Reilly, 116 U.S. 80, 94, 6 S.Ct. 291, 299, 29 L.Ed. 544 (1885). To implement this federal law, the state of Florida has adopted the Uniform Interstate Extradition Act. Ch. 941, pt. 1, Fla. Stat. (1983). Section 941.02 directs the governor of Florida "to have arrested and delivered up" to another state "any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state."
The power of the judiciary to issue writs of habeas corpus derives from English law and Article I, Section 9 of the United States Constitution, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and Article V, Section 5(b) of the Florida Constitution. It is a state court's duty in habeas corpus proceedings challenging extradition to administer the federal law prescribed by Article IV, Section 2, United States Constitution, and 18 U.S.C.A. § 3182, as construed by the United States Supreme Court. South Carolina v. Bailey, 289 U.S. 412, 419-20, 53 S.Ct. 667, 670-71, 77 L.Ed. 1292 (1933). A habeas corpus proceeding challenging extradition involves a "federal question" of whether the accused is a fugitive from justice, and such question is controlled by the federal constitution and laws as interpreted by the United States Supreme Court. Id.; State v. Shelton, 30 Ala.App. 484, 8 So.2d 216, 218 (Ala. 1942).
Interstate extradition is intended to be a summary and mandatory executive proceeding designed to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged crime was committed. Michigan v. Doran, 439 U.S. 282, 287-88, 99 S.Ct. 530, 534-35, 58 L.Ed.2d 521 (1978). Section 3182 requires that the governor of the demanding state deliver to the governor of the asylum state a demand for extradition and an indictment found or affidavit made before a magistrate of the demanding state charging the accused with commission of a crime in the demanding state. See § 941.03, Fla. Stat. (1983).[2] The governor of the asylum state must then determine, as a matter of law, whether the accused has been substantially charged with a crime in the demanding state and whether, as a matter of fact, upon such evidence as is satisfactory to him, the accused is a fugitive from justice. Munsey v. Clough, 196 U.S. 364, 372, 25 S.Ct. 282, 283, 49 L.Ed. 515 (1905). If the governor determines that extradition is *382 proper, he issues a warrant of arrest directing the appropriate law enforcement officers of his state to arrest the accused. 18 U.S.C.A. § 3182; § 941.07, Fla. Stat. (1983); Marbles v. Creecy, 215 U.S. 63, 67, 30 S.Ct. 32, 33, 54 L.Ed. 92 (1909).
Once arrested and held as a fugitive from justice, the accused has a federal constitutional right to question the lawfulness of his arrest and custodial imprisonment by petitioning the circuit court for a writ of habeas corpus and showing upon competent evidence that he was not a figitive from justice of the demanding state. Illinois ex rel. McNichols v. Pease, 207 U.S. 100, 109, 28 S.Ct. 58, 61, 52 L.Ed. 121 (1907); Roberts v. Reilly, 116 U.S. 80, 94-95, 6 S.Ct. 291, 299-300, 29 L.Ed. 544; Crumley v. Snead, 620 F.2d 481, 483 (5th Cir.1980). See section 941.10, Florida Statutes (1983). To be a fugitive from justice within the meaning of Article IV, Section 2, United States Constitution, and 18 U.S.C.A. § 3182, it is necessary that the accused have been in the demanding state when the crime was committed and that he thereafter fled that state and was found in another state. Appleyard v. Massachusetts, 203 U.S. 222, 231-32, 27 S.Ct. 122, 125-26, 51 L.Ed. 161 (1906). This is also true in the case of a proceeding under section 941.03, Florida Statutes (1983). In a habeas corpus proceeding challenging the governor's determination that extradition is proper, the warrant of arrest is prima facie proof that petitioner is a fugitive from justice and may be overcome only by contrary proof presented by the petitioner. Illinois v. Pease, 207 U.S. at 109, 28 S.Ct. at 61. In order to overcome the presumption of fugitiveness arising from the governor's warrant of arrest, the petitioner must present clear and satisfactory evidence establishing beyond any reasonable doubt that he was not in the demanding state on the date of the alleged offense. South Carolina v. Bailey, 289 U.S. at 421-22, 53 S.Ct. at 671. The issue of fugitiveness is one of fact to be determined by the trial judge upon all the evidence. Michigan v. Doran, 439 U.S. at 289, 99 S.Ct. at 535. If competent evidence on the issue of fugitiveness is contradictory, the petitioner will be denied discharge on writ of habeas corpus as a matter of law. Munsey v. Clough, 196 U.S. at 375, 25 S.Ct. at 285. South Carolina v. Bailey, 289 U.S. at 421, 53 S.Ct. at 671.
In the present case the state properly introduced the Florida warrant of arrest which established a prima facie showing that appellant was a fugitive from justice. State v. McCreary, 123 Fla. 9, 165 So. 904 (1936). Appellant then introduced contrary evidence proving, if believed, that he was not in Alabama on the date of the offense and was not a fugitive from justice. It was the trial court's duty at this point to evaluate the competent evidence presented by the state and appellant and determine whether there was conflicting evidence on the issue of fugitiveness. If the court found such a conflict in the evidence, it would have been required to deny appellant's petition for writ of habeas corpus as a matter of law.[3]Munsey v. Clough, 196 U.S. at 375, 25 S.Ct. at 285. If, however, the court had determined there was no competent evidence in the record conflicting with appellant's evidence, then it would have been the trial court's duty to judge the credibility and persuasiveness of appellant's witnesses and determine whether appellant proved by clear and satisfactory evidence beyond a reasonable doubt that he was not in Alabama on the date of the offense. South Carolina v. Bailey, 289 U.S. at 421-22, 53 S.Ct. at 671. Since the trial court did not find that appellant failed to meet his burden of proof, but stated simply that "no legal reason" existed for denying his return to Alabama, it appears the court may have denied the writ as a *383 matter of law. It is therefore necessary for us to examine the documents introduced by the state to determine whether they contain competent evidence of fugitiveness sufficient to create an evidentiary conflict requiring denial of habeas corpus as a matter of law.
Initially, the state introduced the demand for extradition from Alabama which alleged that appellant was in Alabama on the date of the offense. Although it was only necessary that the state introduce the Florida warrant of arrest to establish its prima facie case, State v. McCreary, 165 So. at 906, a valid demand for extradition from Alabama is a necessary predicate to the jurisdictional validity of that warrant of arrest. Section 941.03, Florida Statutes (1981), requires that the governor of Florida have before him a valid demand for extradition from a foreign state before issuing a warrant of arrest. Undeniably, one of the grounds upon which a prisoner may attack the validity of extradition is by showing that the warrant of arrest is invalid because it is not properly based on the required statutory documents. State v. McCreary, 165 So. at 906. The state may rely upon the demand for extradition to prove the jurisdictional validity of the warrant of arrest, but even assuming the arrest warrant is valid, the prisoner also has a right to attack, in a habeas corpus proceeding, the governor's factual determination that he was in the demanding state on the date of the alleged offense. If the demand for extradition from a foreign jurisdiction, which is a statutorily required document, is treated as sufficient evidence of fugitiveness to create an evidentiary conflict requiring denial of habeas corpus as a matter of law, the state need never adduce more proof than the demand and appellant's constitutional right to challenge the governor's factual conclusion of fugitiveness in the warrant of arrest by presenting evidence of his presence elsewhere amounts to little more than a sham. We note that the United States and Florida supreme courts have clearly recognized that not only does a petitioner such as appellant have the right to challenge the jurisdictional validity of the warrant of arrest, i.e., that it is not based upon the required statutory documents, but the petitioner also has the right  even assuming the warrant of arrest and underlying documents are proper  to challenge the factual determination of fugitiveness. In order to give substance to this fundamental constitutional right, we hold that the demand for extradition required by section 941.03 cannot, standing alone, be deemed competent evidence to create a conflict on the factual issue of fugitiveness.
The Second District Court of Appeal has held that a prisoner challenging extradition who presented evidence showing he was not in the demanding state at the time of the alleged offense was entitled to habeas corpus relief when the state failed to offer any "testimony" to refute the prisoner's evidence. Trice v. Blackburn, 153 So.2d 32 (Fla. 2d DCA 1963). The court so held even though the foreign executive's demand and an indictment of the prisoner were introduced by the state and alleged the prisoner's presence in the demanding state at the time of the offense (unlike the indictment in the instant case). We agree with the rationale of the Blackburn decision. We note, however, that the fourth district's decision in Brunelle v. Norvell, 433 So.2d 19 (Fla. 4th DCA 1983), appears to suggest that a foreign executive's demand is, standing alone, sufficient competent evidence to create a conflict in the evidence requiring denial of habeas corpus relief. This reading of Brunelle, if correct, is not consistent with the fundamental right of a prisoner to challenge the factual issue of fugitiveness in a habeas corpus proceeding. Since the facts in Brunelle were not fully stated in the opinion, we cannot be certain that our reading of the decision was the intended holding of the court; however, the opinion on its face appears to conflict with our holding in this case, and we so certify such conflict to the Supreme Court.
The second evidentiary document relied on by the state is the indictment of *384 appellant by the Henry County grand jury. This document is not competent evidence of fugitiveness for several reasons. First, it does not allege that appellant was present in Alabama on the date of the alleged offense. It does not, in fact, even allege the date of the offense. Second, as with the demand for extradition, the indictment is required by statute as a jurisdictional prerequisite to the valid issuance of an arrest warrant. To consider it competent, and therefore conclusive, evidence of fugitiveness would render meaningless appellant's right to challenge the governor of Florida's factual determination that appellant was in Alabama at the time of the offense. Third, in Blackburn the court held that the prisoner was entitled to habeas corpus relief upon proof that he was not a fugitive even though the demanding state's indictment was in evidence, thereby indicating that an indictment, standing alone, is not sufficient to create an evidentiary conflict on the issue of fugitiveness.
Finally, the state relies on the sworn application for extradition made by the Alabama district attorney as creating an evidentiary conflict. This application contains an allegation that petitioner was in Alabama at the time of the alleged offense. It does not appear, however, that this allegation is based upon the personal knowledge of the district attorney; presumably, it is based upon his investigation of the case and is pure hearsay. For the following reasons, this affidavit, being otherwise uncorroborated by competent evidence and not reciting the evidentiary facts upon which the affiant's conclusion of presence in Alabama was based, is not sufficient to create the requisite conflict in evidence to mandate denial of the writ of habeas corpus as a matter of law.
In State v. McCreary, 123 Fla. 9, 165 So. 904 (1936), the accused, Florio, was being held pursuant to a warrant of arrest and filed a petition for writ of habeas corpus alleging he was not in the demanding state at the time of the alleged offense. The petition was denied by the trial court. On appeal the Florida Supreme Court noted a patent legal deficiency in that the demand of the governor of Connecticut had not been introduced in evidence and the record contained no certificate by the governor authenticating the supporting affidavits which had been introduced into evidence. Florio failed, however, to properly prove that the governor of Florida did not have the missing documents before him when he issued his warrant of arrest; therefore, the Supreme Court assumed that such documents were properly before the governor and concluded that he had valid jurisdiction to issue the warrant of arrest.
Nevertheless, the court went on to state that it appeared the circuit judge had admitted the supporting affidavits as evidence of petitioner's presence in the demanding state at the time of the alleged offense. The court held that if the affidavits were admitted for this purpose:
The error in admitting them was probably prejudicial in its nature, thus requiring a reversal of the order for further proceedings not inconsistent with the holdings hereinabove made, for the petitioner introduced some substantial testimony tending to prove that he was not in the demanding state at the time the offense was committed. This testimony was given before the circuit judge by witnesses who resided in Miami, and who were subjected to cross-examination. The petitioner had no opportunity to cross-examine the parties who signed the affidavits introduced in evidence by the respondent and which tended to show the contrary. While it is well settled that, upon habeas corpus proceedings in behalf of one held under an executive warrant of rendition, the courts of this state will not try the question of the guilt or innocence of the accused of an offense charged against the criminal laws of another state, yet the question of whether the accused is or is not a fugitive from justice is a question of fact, and it is competent for the accused to prove, if he can, that he was not bodily present in the demanding state at the time the offense is alleged to have been committed. The *385 decision of the Governor on this point, as shown by the issuance of his warrant of rendition, is sufficient to justify his arrest and extradition unless the presumption in its favor is overthrown by contrary proof.
For the error pointed out, the order remanding the petitioner to custody is reversed, and the cause remanded for further proceedings not inconsistent with the foregoing opinion. It may be that upon another hearing further legal evidence may be available and may be introduced in evidence by either or both sides on the question last discussed. We reverse the case because on that issue the circuit judge may have considered, and probably did consider, the affidavits erroneously admitted in evidence.
165 So. at 906-07 (citation omitted).
McCreary strongly suggests, if not holds, that affidavits do not constitute competent proof to controvert a prisoner's live testimony in a habeas corpus proceeding challenging extradition because the prisoner is denied his right to cross-examine the affiants. We would accept this reasoning and reach such holding were McCreary the controlling case addressing this issue. As noted above, however, habeas corpus proceedings challenging extradition are governed by the federal constitution and implementing statutes as construed by the United States Supreme Court and circuit courts of appeal. The Fifth Circuit Court of Appeal has held that affidavits containing competent and otherwise admissible evidence are sufficient in habeas corpus proceedings to raise disputed factual issues. United States v. Williams, 12 F.2d 66 (5th Cir.1926). Accord Smith v. Idaho, 373 F.2d 149 (9th Cir.1967). See also Escobedo v. United States, 623 F.2d 1098 (5th Cir.1980), cert. denied, 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 497 (1980), holding that hearsay evidence which recited the evidentiary facts upon which the affiant based the conclusion that the accused was present in the state when the offense was committed, is admissible in extradition proceedings. These relaxed rules of admissibility simply excuse the asylum state from having to produce live testimony by witnesses having personal knowledge in extradition proceedings, a requirement which would obviously be unnecessarily expensive and time-consuming to demonstrate only that a factual controversy does exist. With the exception of Brunelle v. Norvell, 433 So.2d 19, which we decline to follow, we have found no cases finding an evidentiary conflict on the issue of fugitiveness that did not involve either live testimony produced by the state, physical evidence properly authenticated, or affidavits based on personal knowledge or reciting the evidentiary facts supporting the conclusions stated therein. E.g., State v. Scoratow, 456 So.2d 922 (Fla. 3d DCA 1984); Bonazzo v. Michell, 221 So.2d 186 (Fla. 4th DCA 1969); Turiano v. Butterworth, 416 So.2d 1261 (Fla. 4th DCA 1982); State v. Starr, 65 So.2d 67 (Fla. 1953). We agree, therefore, that affidavits are admissible to create evidentiary conflict in habeas corpus proceedings challenging extradition, but conclude that such affidavits, in order to be competent to create such conflict, must be based on the personal knowledge of the affiant or, if based on hearsay known by the affiant, must recite the evidentiary facts upon which the affiant's conclusion is based. We hold that the sworn application for extradition in the instant case is not competent evidence to prove that petitioner was in Alabama at the time of the alleged offense because it was not based on the personal knowledge of the district attorney and did not contain the necessary recitation of evidentiary facts upon which the district attorney based his conclusion.
To summarize, the petitioner presented competent evidence showing he was not in Alabama on the date of the offense, and the state presented no competent conflicting evidence. Because there was no conflict in the evidence, it was the trial court's duty to evaluate the testimony of appellant's witnesses, judge their credibility and persuasiveness, and make a finding of fact on whether petitioner had proven by clear and satisfactory evidence beyond a reasonable doubt that he was not in *386 Alabama on the date of the alleged offense. South Carolina v. Bailey, 289 U.S. at 421-22, 53 S.Ct. at 670. It appears from the order in the instant case that the trial court concluded only that no legal reason existed for denying Josey's return to Alabama without making any finding of fact on whether Josey's evidence was sufficiently trustworthy to carry his burden of proof. Although unstated, the court likely based its conclusion on the Fourth District's decision in Brunelle v. Norvell, which we decline to follow.
As did our Supreme Court in State v. McCreary, 165 So. at 907, we reverse and remand for the trial court to make the appropriate finding of fact on whether petitioner has met his burden of proof, with leave to take additional evidence if necessary.
REVERSED and REMANDED.
BARFIELD, J., concurs,
SMITH, J., dissents with written opinion.
SMITH, Judge, dissenting.
I respectfully dissent.
That the appellant had a recent connection with the State of Alabama, a recent connection with the place in Alabama where the property was alleged to have been stolen (a mere 50 miles or so from his Florida home), and recent possession of the specific kind of property alleged to have been stolen, is established by appellant's own testimony. Furthermore, the evidence by one of appellant's witnesses that appellant was not in the state of Alabama when certain property of the same description was allegedly taken from the same owner, Don Johnson, does not eliminate appellant as the perpetrator of the crime charged in the indictment. The testimony regarding the loading of certain fertilizer belonging to Don Johnson by individuals purporting to be representatives of Golden Plant Food Company, is of little or no probative value in this case. It is noted that the indictment charges that the accused unlawfully "obtained" or "exerted unauthorized control" over the fertilizer. The language used conforms to the requirements of Alabama law, under which the offense of theft may be committed in several different ways, including by means of what was formerly known as embezzlement. See, Alabama Criminal Code, § 13A-8-2, and Commentary. Thus, the mere fact that other persons took possession of certain similar property on a certain occasion does not warrant a finding that appellant could not have been in Alabama when he exerted unauthorized control over the fertilizer in question, or other fertilizer of the same kind. This could have occurred earlier on the same day, on the day before, or on some other prior date. A showing that the accused was not in the demanding state on the exact date when the crime was alleged to have been committed is not in itself grounds for discharge of the accused on habeas corpus, unless the exact date or dates constitute a material element of the offense charged. See, People v. Lynch, 16 Ill.2d 380, 158 N.E.2d 60 (1959); Campbell v. Shapp, 385 F. Supp. 305 (E.D.Pa. 1974); Commonwealth of Pennsylvania, ex rel. Kelly v. Aytch, 254 Pa.Super. 28, 385 A.2d 508 (1978).
It is true, as noted by the majority, that the Alabama indictment here does not allege a specific date on which the offense allegedly was committed. Alabama law does not require it. Alabama Criminal Code, § 15-8-30. The indictment may allege that the crime was committed on any specific day before the finding of the indictment, or it may allege generally, as this one does, that the crime was committed "before the finding of the indictment." Id. This particular language has been approved as sufficient to state when the crime was committed for purposes of extradition. Ex Parte Drake, 363 S.W.2d 781 (Crim.App.Tex. 1962).
Appellant's admitted connections with Alabama, and with the Alabama fertilizer dealership which apparently (if appellant's witness is to be believed) was implicated (at least by name) in a fertilizer theft, and appellant's own admission that he came *387 into possession of the same type of fertilizer by delivery in a truck bearing Missouri license plates weigh heavily, in my opinion, against appellant's purely technical defense based upon a contention that he was not in Alabama during a certain twenty-four hour period. In any event, the critical testimony bearing upon appellant's whereabouts was given by appellant and his wife. This evidence is hardly of the caliber that one would expect a trial court to find persuasive given the circumstances of this case. Similar evidence was rejected by the court in Ex Parte Sutton, 455 S.W.2d 274 (Crim.App.Tex. 1970) (testimony of the accused and his wife that he was not in the demanding state on the day the offense was charged to have been committed is not sufficient to defeat extradition).
I particularly take issue with the majority's holding that "the demand for extradition required by section 941.03 cannot, standing alone, be deemed competent evidence to create a conflict on the factual issue of fugitiveness." This is contrary, I believe, to the authorities on the point. But aside from the incorrectness of this holding from a purely legal standpoint, it is contrary to the majority's disposition of this appeal, since by the express language of the majority's opinion, on remand the trial court may deny habeas corpus by merely finding that upon evaluation of the testimony of appellant and his witnesses, the petitioner has failed to prove "by clear and satisfactory evidence beyond a reasonable doubt that he was not in Alabama on the date of the alleged offense." I believe the record already demonstrates this failure on appellant's part, and I would not disturb the trial court's ruling.
I further disagree with the majority's holding that the trial court's ruling that there is "no legal reason" to deny appellant's return to Alabama is insufficient to dispose of the petition for habeas corpus. I think the record discloses a reasonable basis for the trial court's ruling, which is all that is required. I would affirm.
NOTES
[1] The allegation of "unauthorized control" over the property alleged to have been stolen is consistent with either physical presence or absentee control; hence, the indictment cannot be construed as unequivocally alleging that Josey was present in Alabama when the alleged offense was committed. Section 941.06, Florida Statutes (1983), governs extradition of persons not present in the demanding state at the time of the commission of the crime. No attempt has been made to extradite Josey under this section, and this decision is limited to extradition under section 941.03, Florida Statutes (1983).
[2] Section 941.03, Florida Statutes (1983), states:

Form of demand.  No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing alleging, except in cases arising under s. 941.06, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by an authenticated copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of a warrant supported by an affidavit made before a committing magistrate of the demanding state; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation, or parole. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction, or sentence must be authenticated by the executive authority making the demand.
[3] On cross-examination of appellant, the state elicited testimony concerning appellant's past connections with Golden Plant Food Company in Headland, Alabama, approximately six months before the charged offense was committed. This testimony, along with other evidence produced on cross-examination, did not create a conflict in the evidence requiring denial of habeas corpus as a matter of law. Such testimony could, however, be deemed relevant to the court's consideration of the credibility and persuasiveness of appellant's witnesses.